**Richard DABROWSKI,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**WARNER–LAMBERT COMPANY,**
**Defendant-Appellant,**
**Cross-Appellee.**

Nos. 85–1590, 85–1626.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 12, 1986.

Decided April 10, 1987.

Rehearing and Rehearing En Banc
Denied May 21, 1987.

Gary E. Murg, Russell J. Thomas, Jr., Nancy S. Katz, Pepper, Hamilton & Scheetz, Detroit, Mich., Stanley Godofsky (argued), Rogers & Wells, Michael F. Coyne, New York City, for defendant-appellant, cross-appellee.

Marvin D. Sharon (argued), Detroit, Mich., for plaintiff-appellee, cross-appellant.

Before ENGEL, NELSON and RYAN, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is a diversity action in which defendant Warner-Lambert appeals from a judgment entered on a verdict for plaintiff Dabrowski. The jury found that Warner-Lambert discriminated against Mr. Dabrowski on the basis of age, thereby violating Michigan's Elliott-Larsen Civil Rights Act, and also found that the company broke an implied employment contract, thereby incurring liability under the rule of *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). Mr. Dabrowski cross-appeals, asserting that the trial court erred by not awarding him attorney fees and by letting the jury offset his pension benefits against his damages. We think there was insufficient evidence to support a jury verdict based on either age discrimination or implied contract, and we shall therefore reverse the district court's judgment. This disposition of the case renders the cross-appeal moot.

**I**

Richard Dabrowski went to work for the Parke-Davis Company in Detroit in 1952. He obtained a Bachelor of Science degree in chemistry in 1957, at which point Parke-Davis gave him a position as a laboratory analyst. Mr. Dabrowski received numerous promotions over the next twenty years, and ultimately became the Quality Assurance Manager at Parke-Davis' Detroit production facility.

Parke-Davis was merged into Warner-Lambert Company in the 1970's. By the end of the decade, the combined enterprise had begun to cut back its Michigan operations. One result of this economic retrenchment was that the Detroit facility where Mr. Dabrowski worked was closed and its operations moved elsewhere. Anxious to stay in the Detroit area, Mr. Dabrowski applied for a position as Product Administrator in the Capsule Manufacturing Division. Mr. Dabrowski was chosen for that job out of 30 applicants, but Warner-Lambert subsequently announced that the Capsule Manufacturing Division would be moved to South Carolina. Instead of going to South Carolina, Mr. Dabrowski accepted a "temporary" position in Rochester, Michigan. Mr. Dabrowski claims

that he was assured by the hiring supervisor that he would be hired for a "permanent position" as soon as one became available, but Mr. Dabrowski also testified at trial that this supervisor told him that a permanent position could not be "guarantee[d]."

The temporary position was scheduled to last for only a few months. During the period in which he held the temporary position Mr. Dabrowski applied for a total of five permanent jobs with Warner-Lambert. The circumstances of the first two applications were not allowed to go to the jury; those of the last three were.

The jury learned that in March of 1982 Mr. Dabrowski applied for a position as section head of "Drug and Chemical." Instead of hiring the 55 year old Mr. Dabrowski, Warner-Lambert selected a 37 year old person with 18 years less seniority. In April of 1982 Mr. Dabrowski applied for a position as section head of the "Isolated Antibiotic Facility." A 30–year-old man whom we shall call "N.R." was selected, even though he was known to have difficulty in dealing with certain documentation aspects of the job. By July of 1982 N.R. had been discharged because of his deficiencies in handling documentation. In May of 1982 Mr. Dabrowski applied for a position as a supervisor in "Sterile Filling;" a 29–year-old man who had less than six years seniority was selected instead.

After his employment was terminated by Warner-Lambert, as scheduled, in July of 1982, Mr. Dabrowski attempted for a time to find work elsewhere. Eventually he stopped looking, however, because he found it necessary to care for his aging mother.

On January 10, 1984, Mr. Dabrowski filed a complaint in the Circuit Court for Wayne County, Michigan, alleging that in failing to place him in one of the permanent positions for which he had applied Warner-Lambert had violated its contractual obligations and had discriminated against him on the basis of age in violation of state

law.[1] The case was removed to federal district court pursuant to 28 U.S.C. § 1441 and ultimately went to trial. Finding that Warner-Lambert had discriminated on the basis of age and had broken an implied contract, the jury awarded Mr. Dabrowski damages of $437,980; the bulk of this award was designated as compensation for "loss of future wages." The trial judge denied timely motions for a directed verdict and judgment notwithstanding the verdict. On appeal Warner-Lambert asserts that there was insufficient evidence for the case to go to the jury and that the award of damages was excessive in any event.

**II**

"Strictly speaking, this Court does not review the actions of juries. Our review of the sufficiency of the evidence is by the review of a trial judge's rulings on motions for directed verdict or JNOV. In diversity cases within this Circuit, this Court resolves questions of the sufficiency of the evidence by applying the test of sufficiency under state law."
*Moran v. Johns-Manville Sales Corp.,* 691 F.2d 811, 813 (6th Cir.1982). Under Michigan law a court reviewing a denial of a motion for a directed verdict or judgment *non obstante veredicto* "is limited ... to the question of whether the party opposing the motion offered evidence about which reasonable minds could differ." *Perry v. Hazel Park Harness Raceway,* 123 Mich. App. 542, 332 N.W.2d 601, 604 (1983).

■ The evidence presented by Mr. Dabrowski shows little more than that Warner-Lambert hired people younger than Mr. Dabrowski for the positions he wanted. This court has long recognized that the mere fact that a younger employee or applicant receives better treatment than an older one is insufficient to carry the burden of proof in a case under the federal Age Discrimination in Employment Act. See *Locke v. Commercial Union Insurance Co.,* 676 F.2d 205, 206 (6th Cir.1982); *Sahadi v. Reynolds Chemical Co.,* 636 F.2d

---

**1.** Mr. Dabrowski did not bring a claim under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

1116, 1118 (6th Cir.1980). Michigan courts do not take an opposite view regarding the age provision of Elliott-Larsen. In what appears to be the most recent statement by the Michigan Supreme Court on the law of that state regarding age discrimination, it was held that "[e]vidence that a competent older employee was terminated, and a younger employee was retained, is insufficient standing alone to establish a prima facie case when the employer reduces his workforce because of economic necessity." *Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586, 590 (1986).

The rationale for such a rule was explained in the seminal opinion of *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir. 1975), a decision often cited by the Michigan courts. In that case it was stated that

"[t]he progression of age is a universal human process. In the very nature of the problem, it is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in. This factor of progression and replacement is not necessarily involved in cases involving the immutable characteristics of race, sex and national origin. Thus, while the principal thrust of the Age Act is to protect the older worker from victimization by arbitrary classification on account of age, we do not believe that Congress intended automatic presumptions to apply whenever a worker is replaced by another of a different age."

*Id.* at 313 n. 4. In accord with this view is *Eliel v. Sears, Roebuck and Co.*, 150 Mich. App. 137, 387 N.W.2d 842, 844 (1985), where plaintiff relied on

"testimony that Sears hired more young people than old people. As the court explained in *Laugesen v. Anaconda Co.*, 510 F.2d 307, 313 fn. 4 (CA 6, 1975), such a circumstance, without more, will not support a claim of age discrimination. A natural consequence of the aging process is that younger employees are constantly replacing older employees as younger persons enter the job market and older persons leave."

The people hired in preference to Mr. Dabrowski appeared to the selecting supervisors to be qualified, and all had characteristics that compared favorably to Mr. Dabrowski's. Regarding the Drug and Chemical position, the hiring supervisor testified at trial that the person hired had the basic qualifications for the job and exhibited a great deal of enthusiasm in the interview. Warner-Lambert's personnel policies state that a person's "interests" are to be considered along with "ability, skills, performance, education, ... and other non-discriminatory qualifications directly related to successful job performance." An applicant's enthusiasm and general performance in an interview situation are obviously relevant to the decision-making process of any employer; Warner-Lambert's personnel policies reflect that fact.

As far as the Isolated Antibiotic Facility position awarded to N.R. is concerned, it is true that N.R. was discharged after four months for inability to do the job. The relevant question, however, is whether N.R. was known to be unqualified at the time he was hired. An employer may not be held liable merely for making an honest mistake as to an applicant's ability to do the job, for it is possible to make such a mistake with no intent to discriminate improperly against anyone.

The hiring supervisor, Ms. Alice Graham, testified that she hired N.R. in part because he had supervisory experience and in part because she thought he had demonstrated the necessary skills while working for her previously. Ms. Graham did not know that Mr. Dabrowski also had supervisory experience. Mr. Dabrowski attributes her lack of knowledge on this point to a failure on the part of Warner-Lambert's personnel department to send her the applicants' complete personnel files. Instead, Ms. Graham was provided with an incomplete summary of education, skills, etc. But the Elliott-Larsen Act protects people from discrimination on the basis of age, not failures of communication—and Mr. Dabrowski did not show that there was any

discriminatory animus here. It does not appear that the personnel files of younger workers were sent to Ms. Graham while the files of other older workers were not. Nor was there any showing that Mr. Dabrowski's summary was prepared differently from those of younger applicants. As far as this record shows, Mr. Dabrowski was treated the same as everyone else, and that is all the law requires.

Mr. Dabrowski had an opportunity, moreover, to fill in the gaps in Ms. Graham's knowledge at his interview with her. Based on what Ms. Graham knew at the time of her decision, there was no showing that it was unreasonable for her to select N.R. for the job—and this is true even though 20/20 hindsight indicates that someone else might have been a better choice.

With regard to the position in Sterile Filling, there was no evidence that the person hired was not qualified for the job. Ms. Graham, who was the supervisor responsible for making the selection for this position as well, testified that she chose the successful applicant "[b]ecause of his having worked specifically in the biological division, his responsibility involved manufacturing and like processes." As with the Isolated Antibiotic position, the information provided to Ms. Graham by Warner-Lambert's personnel department did not mention that Mr. Dabrowski had supervisory experience; here again, however, there is no evidence that the personnel department handled Mr. Dabrowski's application differently from that of anyone else.

All that Mr. Dabrowski has been able to show is (1) that he failed to succeed in getting a job from Warner-Lambert during a job scramble resulting from a cut back in the company's Michigan operations and (2) that the successful applicants happened to be younger than he. Mr. Dabrowski was able to show that in one of the three instances Warner-Lambert made an unwise choice, but a mere error in judgment does not prove a case of age discrimination.

The picture painted by the facts in this case is not one of a company discriminating on the basis of age; it is a picture, rather, of a company retrenching in a way that required a number of employees to compete for a smaller number of positions available in the Detroit area. That Mr. Dabrowski was not successful in this competition is not indicative of age discrimination; it is simply indicative of the hard times faced by people of all ages in Warner-Lambert's Michigan facilities during this period. When Mr. Dabrowski was only two years younger, as we have noted, he successfully bid for a supervisory position sought by no fewer than 30 applicants; among 29 unsuccessful applicants there may well have been people no less disappointed by Mr. Dabrowski's success than he was disappointed by the success of those who beat him out subsequently.

The recent decision of the Michigan Supreme Court in *Matras* teaches that where a company is in the process of restructuring its work force because of economic problems, an unsuccessful older employee who brings suit for age discrimination must show more than a mere age difference between himself and those employees who better weather the storm. Because Mr. Dabrowski has failed to show anything more than that, we must reverse the judgment insofar as it reflects the verdict that he had been discriminated against on the basis of age.

### III

■ Mr. Dabrowski also brought claims under theories of express and implied contract. The express contract claim was not presented to the jury, because the person who was claimed to have promised Mr. Dabrowski a permanent position admittedly added the caveat that he could not "guarantee" him a job, but the implied contract claim did go to the jury.

Mr. Dabrowski's implied contract claim is a variant of the theme sounded in *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). In *Toussaint* the Michigan Supreme Court held that the written policy statements of an employer could give rise to a legally protected expectation that an employee would not be discharged except

for just cause. Mr. Dabrowski argues that Warner-Lambert had a policy by which it was obligated to pick the most qualified candidate for a position, citing as evidence that when he himself had been involved in hiring and promoting people at Warner-Lambert, it was his understanding that the "most qualified candidate" was to be picked.

It does not necessarily follow, however, that the "most qualified candidate" has a cause of action for breach of contract if he or she does not happen to be selected. For this court so to hold would push the *Toussaint* rationale far beyond the limits to which it has thus far been confined by the Michigan courts, and would permit recovery with only the most ephemeral showing of consideration or detrimental reliance—an element much more clearly present in *Toussaint* and other Michigan wrongful discharge cases.

Mr. Dabrowski's argument, moreover, begs the question of whether he really was the person best suited for the positions he sought. In assessing his own qualifications, Mr. Dabrowski places a great deal of emphasis on his college degree and years of work experience. More time spent in school and on the job cannot automatically be equated with more ability, however. When presented with a number of applicants who possess the requisite technical proficiency, it is perfectly reasonable for an employer to look beyond the words on the applicants' resumes in an effort to gauge, among other things, the interest and enthusiasm the applicant brings to the job. One of the hiring supervisors for the jobs in question here said that it was the enthusiasm and interest of the successful applicant that separated him from Mr. Dabrowski and other unsuccessful applicants. In the case of N.R., the hiring supervisor had first-hand knowledge of his past work and believed on the basis of that knowledge that he was the best person for the job. That this appraisal later proved to be mistaken does not mean that the decision-maker could not exercise her own best judgment in preference to a mechanical formula employing paper qualifications only.

Warner-Lambert's written policy regarding hiring procedures is not without significance here. The implied contract in *Toussaint* was based on a specific provision in the employer's written policy statements, after all, and not on a few truistic impressions such as Mr. Dabrowski's. What Warner-Lambert's written policy statement said, in pertinent part, was this:

"Consistent with Company's Affirmative Action Goals, applicant selection and placement should be based on objective evaluation of individual's ability, skills, performance, education, interests and other non-discriminatory qualifications directly related to successful job performance."

\*    \*    \*    \*    \*    \*

"Personnel [Department] is responsible for:

"1. Insuring the continued integrity of the System by assuring consistent adherence to the administration of this Policy.

2. Assisting supervisors to prepare accurate position descriptions and to develop explicit, job-related criteria for use both in making objective selection decisions and providing advice and counsel to candidates not selected.

3. Reviewing with Corporate Compensation Department all posting notices to verify job grade, title and qualification specifications.

4. Providing supervisors with materials and/or training that enables them to conduct effective selection interviews.

5. Screening of bids from applicants and contacting applicants *not* selected to become candidates.  \*  \*  \*  "

There is no evidence that any of these provisions was violated. Mr. Dabrowski argues that the selection was not made on an "objective evaluation of individual's ability, skills, performance, education, interests and other non-discriminatory qualifications directly related to successful job performance." But this language does not limit a hiring supervisor to a sterile quantification of years of education, experience, etc., without any attempt to make an objective evaluation of less tangible factors. The reasons expressed by the hiring supervi-

sors at trial were well within the parameters of the policy statement.

Pointing to the language that required Warner-Lambert's Personnel Department to "provid[e] supervisors with materials and/or training that enables them to conduct effective selection interviews," Mr. Dabrowski argues that the hiring supervisors should have been provided with the applicants' complete personnel files. Perhaps that would have been a better policy, but the quoted language certainly does not require that the entire personnel file of each applicant be sent to the hiring supervisor. The hiring supervisors were provided with "summaries" of the applicants' education, experience and other qualifications, and nothing in the written policy statement says that more was required. *Toussaint* cannot be read to make an employer liable for a statement never made.

Having found in the record no evidence that Warner-Lambert violated any contractual undertaking, we shall reverse the judgment of the district court insofar as it reflects the verdict that there was a breach of an implied contract. Because we have concluded that there was not sufficient evidence to support the finding of liability under either the statutory age discrimination theory or the breach of contract theory, we have no occasion to address the parties' arguments concerning attorney fees and damages.

The judgment of the district court is REVERSED, and the case REMANDED with instructions to enter a judgment of dismissal.