857 F.2d 1475
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard TRUZZI, Plaintiff-Appellee,
v.
SHELL OIL COMPANY, Defendant-Appellant.
 No. 87-1688.
 United States Court of Appeals, Sixth Circuit.
 Sept. 14, 1988.
 
 Before ENGEL, Chief Judge, MILBURN, Circuit Judge, and DAVID D. DOWD,* District Judge.
 ENGEL, Chief Judge.
 
 
 1
 This appeal presents us with the question of whether the district court abused its discretion in failing to grant either a directed verdict or a judgment notwithstanding the verdict in this implied employment contract case arising under Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980). As we find that there was insufficient evidence to support plaintiff's claim that he had an employment contract that permitted his discharge or demotion only for just cause, we reverse the district court's decision and remand for a judgment of dismissal.
 
 
 2
 Richard Truzzi began working for Shell in March of 1966. In 1974, he was transferred to the Detroit area to begin work as a Territory Sales Representative. He was responsible for the sale of Shell gasoline and other products to individual Shell service station operators. He continued in this position until June of 1984. During this time, he was placed on probation by Shell for three months in 1981.
 
 
 3
 In June of 1984, Truzzi was informed by George Hadley, his district manager, that Shell was going to consolidate its Michigan sales districts, thus eliminating the need for several Territory Sales Representatives. Hadley informed Truzzi that his job would be eliminated and offered Truzzi an opportunity to participate in Shell's Special Staff Redundancy Program, an expanded form of severance pay. Truzzi refused.
 
 
 4
 Later that month, Truzzi was demoted to the position of salaried station manager. He remained in that position until November of 1985. At that time, he was assigned to manage a station in the downtown Detroit area. Truzzi resigned from his position, claiming that the job was unreasonably dangerous.
 
 
 5
 Truzzi commenced this suit on August 1, 1985 in the Circuit Court for Wayne County, Michigan. He alleged that Shell had violated an agreement not to demote or constructively dismiss him without just cause. He further alleged age discrimination. On August 28, 1985 Shell removed the suit to the United States District Court for the Eastern District of Michigan, based on diversity of citizenship.
 
 
 6
 The trial commenced on January 30, 1987, at which time the district judge denied Shell's motion to direct a verdict on both claims. On February 6, 1987, the jury reached its verdict, finding that Shell had breached an employment contract with Truzzi, but had not committed age discrimination. The jury then awarded $250,000 in damages. Shell filed a motion for judgment notwithstanding the verdict and a motion for a new trial on February 27, 1987. The district court denied these motions on June 25, 1987.
 
 
 7
 On appeal, Shell alleges that the district court erred in its rulings on Shell's motions, as there was insufficient evidence to support a jury verdict based on an implied breach of contract. Shell further argues that the court erred because it failed to find that Truzzi was, at most, entitled to nominal damages.
 
 
 8
 Our court has consistently held that in a diversity case, a federal court's standard for deciding a motion for directed verdict or judgment notwithstanding the verdict is provided by state law. See, e.g., Dabrowski v. Warner-Lambert Co., 815 F.2d 1076, 1078 (6th Cir.1987); Rhea v. Massey-Ferguson, Inc., 767 F.2d 266, 269 (6th Cir.1985); Arms v. State Farm Fire & Casualty Co., 731 F.2d 1245, 1248 (6th Cir.1984).
 
 
 9
 Michigan law provides that a court "is limited on review to the question of whether the party opposing the motion offered evidence about which reasonable minds could differ." Perry v. Hazel Park Harness Raceway, 123 Mich.App. 542, 549, 332 N.W.2d 601, 604 (1983). See also, Snider v. Bob Thibideau Ford, Inc., 42 Mich.App. 708, 712, 202 N.W.2d 727, 730 (1972), which states that a court should grant such a motion when, construing all the relevant facts in favor of the non-moving party, "all reasonable men must agree that there has been an essential failure of proof."
 
 
 10
 Under Toussaint, it is incumbent upon the plaintiff to establish a contract, either express or implied, that requires that he be discharged only for cause. 408 Mich. at 598, 292 N.W.2d at 885. In this case, plaintiff claims that the contract was created by the promises made to him that he would have a "career job" with Shell. He also claims that the honesty and fair dealing section of Shell's employee manual establishes his enforceable right to be treated fairly.
 
 
 11
 Truzzi relies primarily upon a statement made to him by Gene Luveland, a vice-president of Shell. Truzzi testified that "Mr. Luveland did state ... that we should not be concerned. That there would be number of us that would be going into it as Territory Sales Manager, Territory Sales Rep. That there would be career-long jobs for a certain number of people that was desirable." Truzzi also testified that he voiced his concerns about stability to Luveland and he was told "that wouldn't be any problem, that territory job as Territory Sales Rep could be a career job for us."
 
 
 12
 Upon cross-examination, Truzzi further clarified his view of the promises that were made to him. He agreed that his performance could affect his assignment, that he had to perform well to keep his job and that his continued employment was predicated upon the existence of an available job.
 
 
 13
 Construing the evidence in the manner most favorable to the plaintiff, we find that reasonable minds could not differ as to the fact that Truzzi has failed to establish a just cause contract. Truzzi never testified that he was unconditionally promised that he would have a career job. At most, he was told that some employees could stay in a job such as his for their entire career. It was made clear to him that his job depended upon continued performance and upon the satisfaction of his employer with that performance. Thus, these promises amount to nothing more than a mere satisfaction contract, see, Toussaint, 408 Mich. at 620, 292 N.W.2d at 895.[1]
 
 
 14
 Even if we were to find a valid Toussaint promise, Truzzi would still be unable to make out a valid Toussaint claim. There is no Michigan authority on the question of whether, in the context of a Toussaint claim, a constructive discharge is distinguishable from an explicit discharge. However, assuming without deciding that a constructive discharge may be adequate to trigger the rights discussed in Toussaint, we still find that the evidence of constructive discharge presented in this case is wholly inadequate as a matter of law.
 
 
 15
 Truzzi claims that he was constructively discharged because he was sent to work in a very dangerous part of the Detroit area. Truzzi has not presented and we have not found any Michigan cases holding that transfer to an allegedly unattractive geographical area constitutes constructive discharge. Moreover, we find that such a holding contravenes public policy. It would permit an employee to sue his employer any time he is assigned to an allegedly dangerous neighborhood. This would make it virtually impossible for employers to provide services to inner city areas and other locations that some employees might find undesirable. We find such a result to be unconscionable.
 
 
 16
 The heart of this dispute is that Truzzi was assigned to work in a location that was unattractive to him. However, he did not have a promise from Shell that he would not be transferred. Further, he has not alleged that the terms and conditions of his employment as a salaried station manager were otherwise altered by Shell. The mere fact that an employee has been transferred cannot establish a constructive discharge.
 
 
 17
 Truzzi's other argument is that a contract was created by his reliance on the provisions of the employee manual. It is possible to base a Toussaint contract on statements made in such manuals. The Toussaint court itself stated that "an employee's legitimate expectations grounded in an employer's written policy statements have been held to give rise to an enforceable contract." Id. at 598, 292 N.W.2d at 884. However, in this case, no enforceable Toussaint promise can be drawn from the Shell manual.
 
 
 18
 Truzzi relies upon the following language from the Shell manual:
 
 
 19
 Honesty and fair dealing are essential to a successful employment relationship. Shell undertakes to be fair with you at all times. In return, Shell expects that you will devote yourself conscientiously to Company objectives during work periods and will refrain from activities or relationships that might conflict with those objectives.
 
 
 20
 Truzzi claims that this provision gave the jury the right to determine whether Shell's treatment of him was honest and fair. We disagree.
 
 
 21
 Our court considered a similar situation in Dabrowski v. Warner-Lambert Co., 815 F.2d 1076 (6th Cir.1987). In Dabrowski, we refused to recognize a Toussaint cause of action that would permit an employee to enforce a statement in his employer's policy manual providing that the most qualified candidate for a job position would be selected. In denying Dabrowski's claim, we stated:
 
 
 22
 It does not necessarily follow, however, that the "most qualified candidate" has a cause of action for breach of contract if he or she does not happen to be selected. For this court so to hold would push the Toussaint rationale far beyond the limits to which it has thus far been confined by the Michigan courts, and would permit recovery with only the most ephemeral showing of consideration or detrimental reliance--an element much more clearly present in Toussaint and other Michigan wrongful discharge cases.
 
 
 23
 Id. at 1081. As in Dabrowski, the policy statement in question in this case would, if enforced by this court, constitute an extreme expansion of the Toussaint doctrine. Truzzi has not presented and we have not discovered a single decision of a Michigan court that has enforced such broad and sweeping language from an employer's policy manual.[2] As we are governed by the law of Michigan in this diversity action, we have no choice but to refuse to allow recovery based upon the policy statements at issue in this case.
 
 
 24
 The decision of the district court is REVERSED and the case is REMANDED to that court with instructions to grant defendant's motion for a judgment notwithstanding the verdict.
 
 
 
 *
 Honorable David D. Dowd, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Truzzi's claim of an oral promise not to discharge except for just cause is also weakened by the fact that no reference to just cause discharge was made in Shell's employee manual. While this fact does not preclude a subsequent oral promise to Truzzi, it does demonstrate that Shell had an earlier opportunity to establish a just cause employment policy and failed to do so
 The promises made to Truzzi were also insufficient to support a contract to demote him only for just cause. However, we note that it is far from clear that Toussaint applies to several Michigan decisions pre-dating Toussaint that enforced employer promises of specific employment conditions, see, e.g., Cain v. Allen Electric & Equipment Co., 346 Mich. 568, 78 N.W.2d 296 (1956) (promise to pay severance pay); Pautka v. Michigan Alkali Co., 274 Mich. 318, 264 N.W. 385 (1936) (promise to pay death benefits). However, these cases involve more specific and concrete provisions than a vague reference to a "career job." We are uncertain whether Michigan's courts would extend this line of cases to the instant situation. However, as noted above, we need not consider this question at this time.
 
 
 [2]
 We note that both federal courts and the courts of Michigan have occasionally used the Toussaint doctrine to enforce an employer's promise relating to certain concrete terms and conditions of employment. See, e.g., Ariganello v. Scott Paper Co., 588 F.Supp. 484 (E.D.Mich.1982); Cain, supra (severance pay); Pautka, supra (death benefits); Sepanske v. Bendix Corp., 147 Mich.App. 819, 384 N.W.2d 54 (1985) (leave policy); Damrow v. Thumb Cooperative Terminal, 126 Mich.App. 354, 337 N.W.2d 338 (1983) (discipline policies). However, all of these cases enforce specific promises to provide employees with particular benefits. It would constitute an even greater expansion of Toussaint to apply it to as subjective a promise as one of honesty and fair dealing