**John F. HALL, Plaintiff,**

v.

**MARTIN MARIETTA ENERGY SYSTEMS, INC., Defendant.**

**Civ. A. No. C93–0085–P(H).**

United States District Court,
W.D. Kentucky,
at Paducah.

June 1, 1994.

John F. Hall, pro se.

Mark C. Whitlow, Whitlow, Roberts, Houston & Russell, Paducah, KY, E.H. Rayson, Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, TN, G. Wilson Horde, Phillip M. Kannan, Alan L. Harrington, Martin Marietta Energy Systems, Inc., Oak Ridge, TN, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff, John F. Hall, filed a pro se complaint against Defendant, Martin Marietta Energy Systems, Inc., alleging that Defendant failed to offer him employment in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (the "ADEA").[1] Defendant's motion for summary judgment requires the Court to determine whether Plaintiff has brought forth sufficient proof to justify a trial. Though various courts have established criteria for making such judgments, no set of elements fit these circumstances precisely, and no mathematical formula can guarantee the correct result. Fairness to defendants requires rigorous analysis of the complaint and supporting facts because the threshold elements derived from *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) demand little of plaintiffs.

With great emotion and tenacity, Plaintiff has pursued his claim, no doubt motivated by the sincere conviction that he was wrongly denied employment opportunity. He urges the Court to prevent a "travesty of justice" and opines that "to grant summary judgment for the Defendant would run contrary to the principles that our founding fathers fought for." Unfortunately, such emotion too often sheds more heat than light. It is this Court's unenviable task to parse the facts from suspicion and the material proof from those disputed, but irrelevant, events in this case. For the reasons set forth herein, the Court believes that Plaintiff has not offered sufficient proof to establish a prima facie case.

### I.

Plaintiff is a retired Kentucky State Trooper and a former Military Police Officer with a Master's Degree from Murray State University. Plaintiff was 43 years old when he first applied for a "security inspector" position with Defendant, which manages two government-owned gaseous diffusion plants located in Paducah, Kentucky, and Portsmouth, Ohio. Although Defendant operates both facilities, the two plants utilize separate employment offices and application processes and do not coordinate hiring decisions. Plaintiff applied at both plants.

The hiring process proceeds according to the following procedures. Defendant interviews applicants for background experience in security and firearms and physical fitness qualifications and maintains a hiring pool of applicants, which is limited to six persons at any one time. Those who are placed in the hiring pool are ultimately offered positions as they become available.[2] Once placed in the hiring pool, a prospective security inspector's file is submitted for government security clearance, which is necessary for employment, the process of obtaining a security clearance that can take eight to twenty months to complete. Only those persons in the hiring pool with clearance (referred to as Q clearance) are eligible for employment. Plaintiff was placed in the hiring pool at Portsmouth, but had not been placed in the Paducah hiring pool at the time of his suit.

Not surprisingly, Plaintiff seeks no action against Defendant's Portsmouth officials. The gravamen of Plaintiff's complaint is Defendant's failure to admit Plaintiff to the Paducah hiring pool. Plaintiff alleges that he was "willfully and unlawfully excluded from this pool [of processed and approved applicants] because of his age." (Complaint at ¶ 18.) He further alleges that Defendant "used the in-clearance hiring list to discriminate against Plaintiff." (Complaint at ¶ 19.) The complaint is so phrased because Defendant's employment decision is determined by placing applicants on the limited hiring pool

---

1. At various points in his memoranda, Plaintiff makes reference to a Conciliation Agreement, the Viet Nam Veterans Readjustment Assistance Act and other federal statutes that he alleges Defendant has violated. Plaintiff has not pleaded these causes of action in the complaint. Defendant properly has not responded. The Court has not considered these as separate causes of action, but has considered any underlying facts for inferences of discrimination.

2. Defendant receives a large number of applications each year (86 in 1992) for a small number of openings (it hired only 3 persons in 1991, 1 person in 1992 and none in 1993). Since December, 1991, only 4 persons have been placed in the hiring pool.

and persons are denied employment by exclusion from the hiring pool. Placement in the hiring pool is essentially tantamount to hiring; exclusion from it simply means that an application is on hold until future vacancies occur.

Plaintiff first applied at the Paducah plant in 1988 and, according to his testimony, claims to have updated his application on a yearly basis. He never sought an interview, however, and, indeed, Plaintiff focused his employment efforts on Portsmouth. Nevertheless, it must be presumed disputed whether Plaintiff did indeed update his Paducah application as required. In February 1989, Plaintiff submitted an application to the Portsmouth plant where he completed the necessary screening, was accepted to the hiring pool, and finally received a Q clearance in February 1991. In March 1991, Plaintiff placed the Portsmouth application on hold and submitted a new application at the Paducah plant.[3] In July 1991, Plaintiff also requested that the Portsmouth plant transfer his application to Paducah. The Portsmouth application, however, was not actually transferred until May, 1992.[4] The delay is immaterial because, prior to that time, Plaintiff attempted to arrange an interview at Paducah. After some delay Plaintiff finally interviewed with the Paducah employment office in December 1992. Thereafter, he was not placed in the hiring pool, according to Defendant, on the basis of an unfavorable interview.[5] Months later, this action ensued.

## II.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. The Court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). Defendant has the burden of conclusively showing that no genuine issue of material fact exists. *Id.* Nevertheless, in the face of a summary judgment motion Plaintiff cannot rest on its pleadings but must come forward with some probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *60 Ivy St. Corp.,* 822 F.2d at 1435.

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *60 Ivy St. Corp.,* 822 F.2d at 1435. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

## III.

This is a disparate treatment case, requiring the plaintiff to prove discriminatory intent: that his employer rejected him for employment because of his advanced age. Plaintiff has no direct proof of discriminatory intent, such as prejudicial statements of De-

---

**3.** Plaintiff was in the hiring pool. Apparently, if Plaintiff had not placed his Portsmouth application on hold, he most certainly would have gained employment there in due course.

**4.** Part of Plaintiff's dissatisfaction concerns Defendant's failure to "transfer" his application immediately. He seems to have thought that his application and Defendant's placement of it in the hiring pool both could be transferred. The delay in transfer occurred in Portsmouth and, therefore, does not figure materially in the Court's consideration. Paducah had a separate application and selection process. Plaintiff's acceptance at Portsmouth could not be transferred to Paducah.

**5.** Interview evaluation is certainly a legitimate, non-discriminatory reason for making hiring decisions. Plaintiff contends it is a mere pretext. He contends that he is more qualified than those placed in the hiring pool and offers his own more positive assessment of the interview. Due to its conclusions herein, the Court need not reach this issue.

fendant. Under these circumstances, the Supreme Court has sanctioned the use of the prima-facie-case method to determine whether the plaintiff is entitled to his day in court. Under this method, the plaintiff may produce a set of circumstantial evidence, which raises a legal presumption that the basis of the employer's action was a discriminatory motive. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The precise application of *McDonnell Douglas* to a given case is far from clear, particularly in age discrimination hiring cases. *McDonnell Douglas* sets forth the necessary prima facie elements in racial discrimination hiring cases: (1) Plaintiff belongs to a racial minority; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *Id.* at 801–02, 93 S.Ct. at 1824. These elements were never intended to be inflexible. Specific prima facie criteria are not applicable in every respect to different factual situations. *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

The *McDonnell Douglas* formula is applicable in age discrimination cases. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). That is not to say, however, that an age discrimination case should be considered in the same way as race discrimination. The Sixth Circuit first addressed an age discrimination case in *Laugesen v. Anaconda Co.*, 510 F.2d 307 (1975) noting that it would be inappropriate, due to the variables inherent in employment situations, to apply *McDonnell Douglas* automatically. *Id.* at 312 and n. 4. After citing Congress's intention that the ADEA be applied on a case-by-case basis, the Sixth Circuit stated:

[P]erhaps the more strict approach which is evident in the treatment of a Title VII race discrimination case in McDonnell Douglas v. Green may not be desirable here. The progression of age is a universal human process. In the very nature of the problem, it is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in ... we do not believe that Congress intended automatic presumptions to apply whenever a worker is replaced by another of a different age.

*Id.* at 313, n. 4.[6]

Similarly, in hiring cases, younger workers will apply for many job openings in greater numbers than older workers because there are more of them entering the labor market or without work. Thus Plaintiff must show some combination of circumstantial evidence sufficient to support an inference that, if such actions of the employer remain unexplained, it is more likely than not that such actions were based on an unlawful, discriminatory criterion. *Furnco Const. Corp.*, 438 U.S. at 575–77, 98 S.Ct. at 2949. But this evidence must be subject to rigorous analysis to avoid an automatic presumption where an older applicant is denied employment.

## IV.

A review of subsequent Sixth Circuit age discrimination hiring cases, however, does not provide a clear road map as to the extent or the character of evidence required to establish a prima facie case in these circumstances. The Sixth Circuit has reported three age discrimination cases specifically concerning hiring, each utilizing the *McDonnell Douglas* prima-facie-case method in a different manner.[7]

---

**6.** The Sixth Circuit ultimately reversed and remanded for a new trial on the ground that the trial court's instructions failed to convey that the plaintiff was entitled to recover, despite the existence of other reasons supporting his discharge, if age was a determining factor. *Id.* at 317.

**7.** This excludes *Dabrowski v. Warner–Lambert Co.*, 815 F.2d 1076 (6th Cir.1987) in which the

defendant appealed a judgment entered on a jury verdict for the plaintiff. In reviewing the lower court's denial of the defendant's motion for a directed verdict, the Sixth Circuit considered whether the plaintiff, who had been discharged in connection with a work force reduction and had later applied for several positions along with similarly displaced workers, had produced evi-

The most helpful of these cases is *Wooden v. Board of Education of Jefferson County, Ky.*, 931 F.2d 376 (6th Cir.1991), in which a permanent part-time school teacher, age 54, alleged that he was rejected for a full-time position on the basis of his age. The Sixth Circuit applied the *McDonnell Douglas* test:

> (1) that he was in the protected age group, between forty and seventy years old; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that after his rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications.

*Id.* at 378. Because the plaintiff produced evidence that "he was rejected; and that the Board hired other applicants with similar qualifications," the court held that the plaintiff had established a prima facie case of age discrimination. *Id.* The Sixth Circuit, however, ultimately upheld the district court's summary judgment for the defendant on the ground that the plaintiff failed to produce evidence that the defendant's legitimate, non-discriminatory reason (that it hired more qualified persons) was pretextual. *Id.*

An earlier case, *Wanger v. G.A. Gray Co.*, 872 F.2d 142 (6th Cir.1989), framed the prima facie elements more broadly. There, the plaintiff's employment had been terminated as a result of a work force reduction. A year later, the plaintiff, then age 52, was allegedly passed over for a position ultimately filled by a 36-year-old. The Sixth Circuit stated:

> [I]n a failure to rehire situation, a plaintiff must meet a modified *McDonnell Douglas* test ... [and] establish: (1) that he is a member of the protected age group; (2) that he is qualified for the rehire or recall position; (3) that he applied for the available position or can establish that the employer was otherwise obligated to consider him; and (4) *that the position went to a younger individual outside the protected class or that other reasonable evidence exists for inferring that he was denied a position because of his age.*

*Id.* at 145 (emphasis added and citation omitted). In framing the requisite prima facie elements, the *Wanger* court generally relied on circuit precedent, *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176 (6th Cir.1983), which involved allegations of discriminatory discharge, perhaps explaining the appearance of the requirement that the employer must have done more than just accept applications from other qualified individuals (according to the traditional *McDonnell Douglas* formula).

Finally, in *Stein v. National City Bank*, 942 F.2d 1062 (6th Cir.1991), the court applied yet another modification of the *McDonnell Douglas* test. In crafting the prima facie elements, the *Stein* court relied on *Simpson v. Midland–Ross Corp.*, 823 F.2d 937 (6th Cir.1987), a discriminatory discharge case, whose prima facie elements, in turn, can be traced again to *Blackwell v. Sun Elec. Corp.*, 696 F.2d at 1181. The court used the traditional *McDonnell Douglas* criteria in the first three elements: he was a member of the protected class (age 40 to 70); was subjected to an adverse employment action; and was qualified for the position. Significantly, however, the court set forth the fourth element as requiring the plaintiff to show that "he was replaced by a younger person." *Id.*, 942 F.2d at 1065. In short order, the court found that the plaintiff had established a prima facie case. The court ultimately held that the plaintiff failed to show that the

---

dence sufficient to sustain a jury damages award. Because this procedural posture of the case required the court to consider the sufficiency of the evidence on the ultimate issue whether age was a determining factor, the prima facie inquiry was irrelevant.

It is noteworthy that although it was clear the defendant had hired persons below the age of forty, each having less seniority than the plaintiff, the court began by stating that the plaintiff's evidence "shows little more than that [the defen-

dant] hired people younger than the plaintiff for the positions he wanted" and that "the mere fact that a younger employee or applicant receives better treatment than an older one is insufficient to carry the burden of proof in [a federal age discrimination case]." *Id.* at 1078. The court concluded that the jury verdict could not stand merely on evidence that the plaintiff failed during a job scramble resulting from a cut back and that those successful applicants happened to be younger than he. *Id.* at 1080.

defendant's legitimate, nondiscriminatory reason for not hiring the plaintiff was pretextual. *Id.* at 1066.

## V.

■ These cases and others raise several questions about the application of the prima facie case standards to the facts of this case that the Court must answer before proceeding further. First and foremost, the question arises whether the fourth element of the traditional *McDonnell Douglas* test, i.e., the position remained open and the employer continued to seek applicants, is even probative in this case since Defendant always accepts applications and maintains a hiring pool. In this Court's view, it is not.

The Sixth Circuit has warned against strictly analogizing the prima facie elements of race discrimination with age discrimination, *Laugesen,* 510 F.2d at 312, and has stated that, on the one hand, "[a] mechanical application of the *McDonnell Douglas* guidelines might bar the suit of a worthy ADEA claimant," and, on the other hand, "an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists." *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982).

In this Court's view, such a mechanical application of the guidelines in this case is particularly inappropriate. Defendant maintains a hiring pool of no more than six, but does continually accept applications for security inspectors. Because Defendant always accepts applications, therefore, the fact that Defendant continued to accept applications after it rejected Plaintiff for employment does not support an inference of discrimination.[8] Inferences must be based on common sense, not upon a rigid formula. In this case, it is meaningless that Defendant continued to accept applications.[9]

The *McDonnell Douglas* test is anything but rigid, therefore, our inquiry does not end here. Plaintiff may still produce some additional evidence to establish a prima facie case.

## VI.

■ Plaintiff contends that he has established a prima facie case because Defendant filled the hiring pool with younger workers. This argument requires the Court to consider what group of persons must be treated disparately to support an inference of discrimination, *i.e.,* must the group merely consist of younger persons or must those persons be within the protected class.

For many years, Sixth Circuit cases compared a plaintiff's discharge or hiring to the fate of similarly qualified younger workers. Not long ago, however, the Sixth Circuit had occasion to consider whether such a comparison was sufficient when the other workers hired were themselves over 40 years old. It held that in a prima facie case of age discrimination the plaintiff must show that the defendant employer hired persons *who are not members of the protected class,* that is, below the protected age of 40. *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 379 (6th Cir.1993). In *LaPointe,* the Sixth Circuit held that the plaintiff, who was 51 years of age, failed to establish a prima facie case where the plaintiff's employer had replaced his position with an individual, age 43, and then another age 44, on the ground that these workers were members of the protected age group. *Id.* Although subsequent Sixth Circuit opinions reiterate the "younger replacement" language, *see Roush v. KFC National Management Co.,* 10 F.3d 392 (6th Cir.1994), *Lapointe* is the only Sixth Circuit panel to address this distinction, which in

---

**8.** In *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir.1988) the court similarly required "additional direct, circumstantial or statistical evidence that age was a factor" in a case involving discharges due to a corporate reorganization. *Id.* 942 F.2d at 1091. The plaintiff, then age 44, was discharged but not replaced; instead, her responsibilities were delegated to two other supervisors, ages 47 and 59. The Sixth Circuit held that because the plaintiff

failed to present evidence that management favored younger workers, tended to fire older workers, or indicated in some manner that older workers were held in disfavor, the plaintiff failed to establish a prima facie case under the *McDonnell Douglas* guidelines. *Id.*

**9.** According to the record, since Plaintiff's interview, no one has been added to the hiring pool.

other reported decisions appears to have been nondispositive.

Plaintiff was only 43 years old when he submitted an application for employment at defendant's Paducah plant. Since 1989, three out of ten individuals placed in the hiring pool by Defendant were over 40 years old. Since 1991, out of four persons Defendant placed in the hiring pool, two individuals were 43 and 44 years of age respectively. To draw a legal inference of age discrimination based upon a few years age difference is completely unjustifiable. The difference between age 46 and ages 43 or 44 is simply not probative. Common sense counsels us that the fact that Defendant hired these "younger" over 40 applicants instead of Plaintiff does not create a reasonable inference of discrimination against the same age group as those actually hired. Logically and legally, the *Lapointe* opinion, therefore, is applicable under the facts of this case.

Plaintiff also complains that at the time of his initial application to the Paducah plant in 1988, his former supervisor at the Kentucky State Police, James Lee, submitted an application, received an interview, and was ultimately hired in 1990. Mr. Lee was 43 years of age when hired. For obvious reasons, these facts do not support an inference of discrimination against those over 40 years of age. In fact, it supports the opposite inference.

This Court concludes that the only relevant evidence in this case supporting an inference is Defendant's treatment of persons in the age protected class. In light of Defendant's hiring process, no other comparison could support an inference that Defendant discriminated against Plaintiff on the basis of his age or that Defendant adopted policies which treated differently those in a protected age class.

### VII.

■ Plaintiff proposes a statistical analysis as an alternative method of showing an inference of unlawful discrimination to establish a prima facie case. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff may establish a prima facie case using statistical information, direct and circumstantial evidence other than that provided in the *McDonnell Douglas* criteria. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1390 (6th Cir.1993); *Blackwell*, 696 F.2d at 1180. If Plaintiff offers statistics to support his prima facie case, those statistics must support the inference that he was treated differently than those outside the protected group.

In this case Plaintiff offers the statistic that only one of seventeen persons hired between 1988 and 1993 was over the age of forty. For purposes of this motion, the Court will assume that the 1988–1993 time period is relevant for consideration.[10] The

---

10. Plaintiff contends that Defendant discriminated against his Paducah employment application between 1988 and 1993. It is disputed whether Plaintiff actually did keep his application active. He has no records and only his own unsure testimony to support his belief that he continually updated his application. It is weak evidence for such an important point. Regardless, in March, 1991, Plaintiff filed an entirely new application at Paducah. The potential significance concerns whether statistical analysis of Defendant's employment practices is relevant for the entire 1988–1993 time period or whether such analysis is limited to 1991–1993. Without giving Plaintiff the benefit of this considerable doubt, his statistics would be truly meaningless. Only statistics as to Defendant's employment conduct during the pendency of Plaintiff's application could be relevant to support an inference about Defendant's motives during that time. This is true for the reason that while the inference is necessarily generalized, the proof must be personal as to Plaintiff, to his job, his qualifications, his circumstances and as to Defendant's motives for not hiring.

To escape this relevancy quandary, Plaintiff asserts that Defendant operated both Portsmouth and Paducah and therefore the Court should consider statistics for Paducah from the time Plaintiff first applied at Portsmouth. Plaintiff applied at Portsmouth in February, 1989. However, if this Court were to view the company's actions taken together in Paducah and Portsmouth, then Plaintiff would fail to establish the most important and essential element of a prima facie case: that is the requirement of an unfavorable employment action. Since Plaintiff was placed in the hiring pool at Portsmouth, he cannot show that element. It is undisputed that the two plants make separate employment decisions. Therefore, inferences of discrimination at Paducah must be drawn from the actions of the officials at Paducah alone.

statistics, nevertheless, fail to present sufficient probative information from which this Court could infer discrimination.

In *Grano v. Department of Development of Columbus,* the Sixth Circuit considered a similar use of statistics in establishing a prima facie case of gender discrimination. There, the plaintiff tendered statistics showing the numbers of male and female employees; e.g., one of nine officers and managers was female; three of twenty-seven professional positions were filled with women. 637 F.2d 1073, 1078 n. 1 (6th Cir.1980). The court stated that "these statistics do not tend to show discrimination. The reason is that plaintiffs introduced no evidence as to the relevant labor market ... No evidence was presented as to how many women were available [and qualified] in the surrounding area." *Id.* at 1078. Without this information, the Court held that these statistics as a matter of law do not support an inference of discrimination. *Id.,* (citing *Hazelwood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977)).

Likewise, there is no evidence in the case at bar as to how many persons over the age of forty were qualified and available in the surrounding area. Plaintiff has the burden and obligation of demonstrating that his statistics have meaning. It will not be presumed. Plaintiff has presented none of the kind of supporting statistics from which this Court could judge the true probative value of the statistics as required in *Grano.* Plaintiff's statistical proof, one of seventeen over the age of forty hired, "lack[s] probative value" and thus fails to support an inference of discrimination. *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 943 (6th Cir.1987).

Moreover, to be truly probative, any statistics should address the numbers of those

admitted to the hiring pool. The only evidence is that from May, 1990 to November 1992, Defendant placed a total of ten individuals in the hiring pool. Three were over 40 years old. This evidence is not sufficiently probative to infer discrimination since there is no showing that this figure statistically under-represents the qualified potential applicants over the age of forty in the relevant labor market. *See Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 943 (6th Cir.1987). Since Plaintiff applied at Paducah in 1991, Defendant has placed four persons in the hiring pool, two of whom were over the age of 40, to wit, William Williams age 43, and John Earles age 44, and another of whom was an African American. These statistics probably prove the absence of discrimination. More important for our purposes, the Court cannot find a basis to support an inference of discrimination against Plaintiff on the basis of his age.

### VIII.

One of the great difficulties in assessing this case has been separating that evidence which is material to the case from that which is not. Plaintiff claims many material issues of disputed fact and the Court has attempted to address each of the relevant items in an orderly fashion.[11] The Court will now briefly comment on the others.

The Court has considered the issue of Defendant's hiring merely younger applicants. Plaintiff has presented no evidence that Defendant hired unqualified persons. He cites certain supposed hiring standards at Portsmouth and applies them to Sheila McMullen, who was hired at Paducah.[12] The Portsmouth standards and practices, however, have no relevance to this case. As is too often the case, Plaintiff attempts to draw

---

Giving Plaintiff the benefit of the doubt, the Court will analyze his statistics which cover the entire five-year period.

**11.** Plaintiff identifies the following disputed issues: (1) the 1989 application file, which this Court assumed as true and considered in Sections VI and VII; (2) the hiring of a younger and unqualified applicant; (3) the overqualification issue; (4) the hiring pattern from 1988 to present, which was considered in Section VII and elsewhere; (5) the legality of the in-clearance hiring list; (6) threats of retaliation by Bill Thompson; (7) an unlawful job offer, and (8)

false statements by Mr. Ellington, which are resolved in Plaintiff's favor to the extent they are relevant. See Plaintiff's Reply to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment at p. 3 (January 21, 1994).

**12.** Plaintiff makes no assertion that McMullen did not meet the Paducah job standards, where she was placed in the hiring pool. See Plaintiff's Reply (January 21, 1994) at p. 5–6. McMullen has over 12 years experience as an officer in the Tennessee National Guard, which experience in-

conclusions from unrelated pieces of evidence.

Assuming that Plaintiff was more qualified than any other applicant, the ADEA does not prohibit Defendant from hiring applicants not as qualified as Plaintiff, the ADEA prohibits rejecting applicants between ages 40 and 70 on the basis of age. Defendant can choose between qualified persons without subjecting itself to legal sanctions. Nor does Plaintiff's overqualification form the basis for a prima facie case. If, however, an employer favors unqualified persons over qualified age protected persons, one may infer that the employer has used age as a criteria for employment in violation of the ADEA. Plaintiff has presented no evidence of this.

Plaintiff argues that he was never offered a part-time job or, in the alternative, that he never rejected such an offer. The Court accepts this as true. The Court has not considered in any way either the alleged offer or its acceptance or rejection. Therefore, the resolution of this factual issue is immaterial to the pending motion.

Plaintiff argues that the in-clearance hiring list is "illegal." The Court has thoroughly considered whether any aspect of Defendant's hiring procedures demonstrate a direct or indirect inference of discrimination. That issue is material to the case. Whether the hiring pool procedure may be unlawful for some other reason is not raised by the pleadings. The Court is therefore only concerned with the discriminatory intent of Defendant's actions or policies.

Plaintiff asserts that Bill Thompson called him in January, 1993, and implied that he would not be hired in Paducah and that his application would be purged. Plaintiff refers to this as a "threat of retaliation." The Court assumes that Plaintiff had already been told on December 8, 1992, that his application could not be accepted because no openings existed. Therefore, Mr. Thompson's statements do not add anything regarding age discrimination. His comments themselves contain no direct evidence of age discrimination. Rather they merely confirm the employment decision which Defendant had already communicated to Plaintiff. The prin-

cipal issue in this case is whether there is a basis for inferring discrimination prior to December, 1992. The Court has thoroughly reviewed this issue. Thompson's comments are immaterial to that consideration.

The Court is entering an accompanying order consistent with this Memorandum Opinion.

### ORDER

This matter is before the Court on motion of Defendant, Martin Marietta Energy Systems, Inc., for summary judgment and on motion of Plaintiff, John F. Hall, for a jury trial. The Court having read the parties' memoranda and exhibits, the record and pertinent authority, having issued a Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for a jury trial is MOOT;

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is SUSTAINED and Plaintiff's complaint is DISMISSED with prejudice.

This is a final and appealable order and there is no just reason for delay.

---

cludes an impressive list of command responsibilities. Under most definitions, this would at least qualify one by experience to perform certain security occupations.