**Eugene BARAGAR, Plaintiff,**

v.

**STATE FARM INSURANCE COMPANY, Defendant.**

No. 1:93–CV–979.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 18, 1994.

J. Clarke Nims, Gruel, Mills, Nims & Pylman, Grand Rapids, MI, for plaintiff.

Thomas J. Barnes, Joseph J. Vogan, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for defendant.

## OPINION

QUIST, District Judge.

Plaintiff, Eugene Baragar, brought this action against his employer State Farm Insurance Company (State Farm) alleging he was wrongfully demoted. The demotion occurred in October of 1989. This matter is before the Court on defendant's motion for summary judgment.

### FACTUAL BACKGROUND

Plaintiff began his employment with State Farm in October of 1962. He worked as a claims representative in the Muskegon office until 1971 when he was transferred to the Grand Rapids office and promoted to claims superintendent. In 1985, Bob Butler, the divisional claims superintendent, indicated that plaintiff's unit was not performing at an acceptable level. In approximately May of 1989, Mr. Butler spoke with plaintiff about the possibility of moving down into a claims adjuster position. Plaintiff responded that he would not voluntarily accept that type of demotion. Following this discussion, plaintiff contacted Dave Hurley, the company's personnel director to discuss what might happen if plaintiff did not step down into a claims adjustor position. Plaintiff received a memo from Mr. Hurley dated June 15, 1989, stating that "Any involuntary removal would require executive office approval [and] it is certainly not the company's intent or practice to demote or terminate, for job performance reasons, anyone whose job performance rating is Expected or Above Expected."

A performance evaluation of plaintiff conducted in the summer of 1989 rated him at a "below-expected" level. In September of 1989, Mr. Butler suggested that plaintiff become a claims supervisor, a position below a claims superintendent's position but above a claims adjuster position. Mr. Butler proposed that the corresponding reduction in salary occur gradually over a five year period. After this discussion, plaintiff again contacted Mr. Hurley about what would happen if he refused to accept the demotion. Mr. Hurley allegedly told him that "as long as you're being rated 'expected' you probably won't be terminated." Plaintiff discussed the matter with his wife and then informed Mr. Butler that he would accept the new position. Mr. Baragar voluntarily signed a formal written agreement which outlined the salary reduction associated with the claims supervisor's position.

In February of 1993, more than three years after accepting the new position, plaintiff complained that it was unfair and wanted State Farm to restore his pay. The company refused. Mr. Baragar filed this lawsuit alleging that State Farm maintained a policy and practice of demoting employees for just cause only. He claims that State Farm breached its contractual obligations to him by demoting him without just cause.

State Farm has filed a motion for summary judgment claiming that 1) Michigan courts have not extended the legitimate expectations prong of *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), to claims for wrongful demotion; 2) there was no "clear and unequivocal" promise to demote only for just cause; 3) plaintiff agreed to the demotion; and 4) even if plaintiff did not agree to the demotion, there was just cause for demoting him as a matter of law.

■ Plaintiff's response brief states that only argument number one set forth above is properly before the Court. At the Rule 16 conference, State Farm's counsel indicated that they were considering filing a motion to determine whether Michigan recognizes claims for wrongful demotion. The Case Management Order states that further discovery proceedings would be stayed until May 17, 1994. Discovery was stayed so that State Farm could file an early dispositive motion. Plaintiff argues that at this stage it would be unfair for the Court to consider State Farm's other grounds for summary judgment since discovery has been suspended. In its reply brief, State Farm challenges this assertion. State Farm states that an early dispositive motion was intended to test both the legal and factual support for plaintiff's claim. The Court agrees with the plaintiff that the only argument properly before the Court is whether the Michigan courts have extended the legitimate expectations prong of *Toussaint* to claims of wrongful demotion.

On June 15, 1994, following oral argument on defendant's motion for summary judgment, the stay on discovery was lifted, the discovery deadline was extended to October 17, 1994, and the dispositive motion filing deadline was extended to November 15, 1994. The defendant's motion for summary judgment was taken under advisement. During oral arguments, the plaintiff made a motion for leave to amend his complaint to include the argument that there was an express agreement between plaintiff and defendant, which the Court will address in this Opinion and Order.

### LEGAL ANALYSIS

■ The issue now before the Court is whether Michigan courts have extended the legitimate expectations prong of *Toussaint* to claims of "wrongful demotions." This Opinion only refers to the legitimate expectations prong of *Toussaint*. In *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), the Michigan Supreme Court modified the traditional employment-at-will doctrine. The court, in deciding whether Charles Toussaint was wrongfully discharged, held that an express provision in an employment contract, stating that the employee will not be discharged except for just cause, was legally enforceable although the contract was not for a definite term. *Id.* at 598–99, 292 N.W.2d at 885. More important to plaintiff's claim, *Toussaint* held that there was a public policy exception to the employment-at-will doctrine where an employer's

written policy statements, if they give rise to legitimate expectations of job security, may be legally enforceable in contract. *Id.* However, it is unclear whether the legitimate expectations portion of *Toussaint* applies to "wrongful demotion" in addition to wrongful discharge.

The Michigan Supreme Court has not addressed whether state law recognizes "wrongful demotion" or whether the reasonable expectation prong of *Toussaint* should extend to "wrongful demotion." The rulings from the Michigan Court of Appeals have been inconsistent regarding whether the reasonable expectations prong of *Toussaint* applies to just-cause demotions and other personnel policies.[1] In *Wieczorek v. Volkswagenwerk, AG*, 731 F.2d 309, 310 (6th Cir. 1984), the court held that "[t]he law of Michigan is controlled by a decision of the Michigan Court of Appeals until the Michigan Supreme Court or another panel of the Michigan Court of Appeals rules otherwise." Since there is little guidance from the state courts on this issue, the Sixth Circuit and district courts have often declined to decide the issue or have refused to extend *Toussaint* beyond the wrongful discharge scenario.[2]

As noted, the Sixth Circuit has not given a clear indication whether the *Toussaint* doctrine should extend to cases of "wrongful demotion." In *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1164 (6th Cir.1990), the Sixth Circuit indicated that Michigan courts would recognize a "wrongful demotion" claim. The court based its decision on *Richards v. Detroit Free Press*, 173 Mich.App. 256, 433 N.W.2d 320 (1988) (see note 1 for subsequent history), where the Michigan Court of Appeals stated that a demotion would support a wrongful discharge claim. However, in another 1988 ruling, *Fischhaber v. General Motors Corp.*, 174 Mich.App. 450, 436 N.W.2d 386 (1988), the court of appeals held that *Toussaint* was limited to employee discharge and not expanded to changes in job assignments. Moreover, the *Richards* case has been remanded several times by the Michigan Supreme Court for reconsideration of more recent employment cases. Since the court in *McDonald* based its decision solely on *Richards*, the decision does not clarify whether Michigan would recognize a "wrongful demotion" claim under *Toussaint*. Additionally, the Sixth Circuit in *Dabrowski v. Warner–Lambert Co.*, 815 F.2d 1076, 1080 (6th Cir.1987), held that *Toussaint* did not extend to a policy where the defendant was obligated to pick the "most qualified candidate." The court explained:

> For this court to so hold [that *Toussaint* applied] would push the *Toussaint* rationale far beyond the limits to which it has thus far been confined by the Michigan courts, and would permit recovery with only the most ephemeral showing of con-

---

1. See *Maeder v. General Motors Corp.*, No. 139320, slip op. (Mich.App. March 14, 1994) (employment contract could contain provision that employee be demoted for just cause only); *Mourad v. Automobile Club Insurance Co.*, 186 Mich.App. 715, 465 N.W.2d 395 (1991) (plaintiff was demoted; court held that jury could find constructive discharge and just-cause contract); *McGuire v. Wayne Center, Inc.*, No. 120234, slip op. (Mich.App. July 31, 1991) (court acknowledged disagreement as to extension of *Toussaint* to "wrongful demotion"); *Fischhaber v. General Motors Corp.*, 174 Mich.App. 450, 436 N.W.2d 386 (1988) (*Toussaint* strictly for employee discharge and not changes in job assignments); *Richards v. Detroit Free Press*, 173 Mich.App. 256, 433 N.W.2d 320 (1988), *remanded*, 433 Mich. 913, 448 N.W.2d 351 (1989), *remanded* 439 Mich. 895, 478 N.W.2d 438 (1991), *remanded* No. 147500, slip op. (Mich.App. May 26, 1992), *remanded*, 514 N.W.2d 763 (Mich.1994) (court said demotion would support a wrongful discharge claim); *Schipani v. Ford Motor Co.*, 102 Mich.App. 606, 302·N.W.2d 307 (1981) (demoted plaintiff brought suit; defendant's summary judgment denied).

2. See *Rodgers v. Flint Journal*, 948 F.2d 1290 (6th Cir.1991) (text at 1991 WL 243559) (court did not determine whether *Toussaint* applies to "wrongful demotions" because state law not clear and claim failed on other grounds); *Truzzi v. Shell Oil Co.*, 857 F.2d 1475 (6th Cir.1988) (text at 1988 WL 94638) (court declined to decide whether *Toussaint* extended to "wrongful demotion" or constructive discharge because evidence was inadequate to establish claim); *Walker v. Consumers Power Co.*, 824 F.2d 499 (6th Cir. 1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988) (court stated Michigan has not extended *Toussaint* to promotions; plaintiff's claim also failed for insufficient evidence); *Joumas v. Maryland Casualty Co.*, 698 F.Supp. 675 (E.D.Mich.1988) (absent further guidance from state courts *Toussaint* only applies to just-cause *terminations*).

sideration or detrimental reliance—an element much more clearly presented in *Toussaint* and other Michigan wrongful discharge cases.

*Id.* at 1081. Thus, it appears from the cases noted that the Sixth Circuit is reluctant to extend *Toussaint* beyond wrongful discharge, or even decide the issue, without further guidance and clarification from the state courts.

In order to determine whether the Michigan Supreme Court would extend *Toussaint* to "wrongful demotion" cases, the court must examine the underlying public policy in *Toussaint* and its subsequent interpretations. The Michigan Supreme Court explained its reasoning for adopting the *Toussaint* doctrine as follows:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. . . . It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer then has created a situation "instinct with an obligation."

408 Mich. at 613, 292 N.W.2d at 892.

The *Toussaint* court explained that once the company has announced its policy, it may not treat its promise as illusory because the company has thereby obtained the benefits of improved employee attitudes and improved the quality of its work force. *Id.* at 619, 292 N.W.2d at 894. In addition, the court explained that rules and policies uniformly applied are a part of the employment contract as much as a promise to discharge only for cause. *Id.* at 624, 292 N.W.2d at 897.

The *Toussaint* court's underlying concern is with an employee justifiably relying on an employer's policies and with the employer then only selectively enforcing certain polices and hiding behind the employment-at-will doctrine. Although the language in *Toussaint* seems to be generally applicable to all policies that the employer has implemented, the case was written in a wrongful discharge setting and the Michigan Supreme Court has given no explicit indication that any other type of employer policy would be enforced under the ruling.

The Michigan Supreme Court cases following *Toussaint* attempted to clarify the *Toussaint* doctrine. The court in *In re Certified Question (Bankey v. Storer Broadcasting Co.)*, 432 Mich. 438, 455, 443 N.W.2d 112, 119 (1989), agreed with the *Toussaint* holding that employers should be held accountable for official, established personnel policies and that these policies should be consistently applied to all employees. However, the court did condone an employer's right to make good faith changes in policy, explaining that a policy is designed to be a flexible framework for company operations, and that operating policies need to be adaptable and responsive to change in a "modern economic climate." *Id.* at 456, 443 N.W.2d at 120. The court went on to say that any changes not made in good faith would undermine the principles that *Toussaint* was based on "if an employer could benefit from the good will generated by a discharge-for-cause policy while unfairly manipulating the way in which it is revoked." *Id.* at 457, 443 N.W.2d at 121. The court, while not condoning bad faith changes in policy, did note that employers still needed to have flexibility in changing policies. The court even went so far as to say that job commitments need not be permanent to have value, and that a permanent job commitment is a luxury in the modern workplace. *Id.* at 455, 443 N.W.2d at 119.

In *Rowe v. Montgomery Ward & Co., Inc.*, 437 Mich. 627, 473 N.W.2d 268 (1991), the Michigan Supreme Court attempted to come up with a decision consistent with contract law, while reducing the possibility of abuse by either the employer or employee. The plaintiff in *Rowe* claimed that oral statements made to her in the pre-hire interview, and written rules of conduct, implied a policy not

to terminate except for cause. *Id.* The court held that along with employer's oral statements, objective evidence showing mutual assent was needed to support a *Toussaint* claim for wrongful discharge. *Id.* at 640, 473 N.W.2d at 273. The court also held that the rules of conduct did not create a contract for just-cause termination only. *Id.* at 645, 473 N.W.2d at 275. The ruling in *Rowe,* in an attempt to clarify *Toussaint,* limited the *Toussaint* holding. The *Rowe* decision "appears to be the court's gradual shifting in favor of the employer" and a victory for the employer. Dallas Moon, Note, *Rowe v. Montgomery Ward & Co.: The Demise of Toussaint?,* 3 Det.C.L.Rev. 711, 742 (1992).

Most recently, in *Rood v. General Dynamics Corp.,* 444 Mich. 107, 507 N.W.2d 591 (1993), the court held that the defendant's policies and procedures were sufficiently clear to create a question for the jury regarding the claim for wrongful discharge. In rationalizing the judicial enforcement of employer policies regarding employee discharge, the court explained that in enforcing these policies and procedures, the ultimate benefit is to the employer because of an "orderly, cooperative and loyal work force." *Id.* at 138, 507 N.W.2d at 606 (quoting *Toussaint,* 408 Mich. at 613, 292 N.W.2d at 892). This benefit, as recognized in *Toussaint,* is a sufficient basis for the enforcement of job security promises in the employer's policies. *Id.* at 138, 507 N.W.2d at 606. However, the court referred only to wrongful discharge situations when outlining the public policy behind the *Toussaint* doctrine.

The underlying public policy expressed by the Michigan Supreme Court in *Toussaint, In re Certified Question, Rowe,* and *Rood* arguably could apply to employer policies in general. However, in those cases, the court does not explicitly state that it is limited or not limited to wrongful discharge situations.

The ramifications of extending *Toussaint* to cases other than wrongful discharge have been addressed by the Michigan Supreme Court. In *Bullock v. Automobile Club of Michigan,* 432 Mich. 472, 444 N.W.2d 114 (1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1118, 107 L.Ed.2d 1024 (1990), the court

found that the plaintiff had sufficient evidence to show a claim of wrongful discharge. The plaintiff alleged that he was forced to resign after the defendant changed the compensation program. *Id.* at 477 n. 5, 444 N.W.2d at 116 n. 5. Referring to compensation systems, Justice Griffin, concurring in part and dissenting in part, noted that:

> Even if it can be said that policy considerations were sufficient to justify the *Toussaint* intervention to protect job security, it is difficult to imagine the scope of difficulties and mischief that would be encountered if *Toussaint* were to be extended beyond wrongful discharge into every facet of the employment relationship. Particularly in light of the enormous potential cost to the system that such an extension would entail, including damage to the delicate balance of the employee-employer relationship, I would take this occasion to express the view that it would be prudent and wise to leave to the Legislature the public policy decision whether, or to what extent, *Toussaint* should be extended beyond wrongful discharge.

*Id.* at 522, 444 N.W.2d at 136.

In *Dumas v. Auto Club Insurance Association,* 437 Mich. 521, 529, 473 N.W.2d 652, 655 (1991), the Michigan Supreme Court stated one of the issues as follows:

> ... whether to extend the "legitimate expectations" leg of *Toussaint* beyond wrongful discharge disputes to cover an employee's compensation policy.

The court chose not to extend the "legitimate expectations" cause of action in that case, which involved renewal commissions as distinguished from already earned but not paid deferred compensation. The court said, "[i]t does not logically follow that *Toussaint* should be extended to the area of compensation." 437 Mich. at 531, 473 N.W.2d at 656. In addition to lack of precedent for extending *Toussaint,* the court based its decision on public policy considerations that if the "legitimate expectations" claim were extended "to every area governed by company policy, then each time a policy change took place contract rights would be called into question." *Id.* at 531, 473 N.W.2d at 656. The court went on to say that the resulting litigation would

substantially impair the company's ability to operate and formulate policy. *Id.* The court concluded that it would not extend *Toussaint* to permanent compensation plans "[g]iven the traditional reluctance of courts to interfere with management decisions and the needed flexibility of businesses to change their policies to respond to changing economic circumstances." *Id.* at 532, 473 N.W.2d at 657.

Thus, whether or not the Michigan Supreme Court would recognize "wrongful demotion" is unclear. Although *Toussaint* and cases interpreting *Toussaint* speak in general terms regarding the public policy behind the enforcement of employer's policies, the cases are wrongful discharge cases, and the court gives no indication that *Toussaint* should extend any further. The court has declined to extend *Toussaint* to compensation. The question then becomes whether a demotion is closer to a termination or a reduction in pay.

Termination of employment is often called "economic capital punishment." On the other hand, cutting a coffee break from 15 minutes to ten minutes, reducing compensation of an individual employee or group of employees, or demoting an employee, while hurtful, is not as severe. Although a demotion might hurt one's pocketbook and pride, in this court's judgment it is closer to a cut in pay (*Dumas*) then economic capital punishment (*Toussaint*). The same policy considerations that prevented the extension in *Dumas* would prohibit the extension here. We live in a very competitive age where being able to make quick management decisions and adjustments often *determines* the failure or success of a business. Therefore, absent a clear statement from the Michigan Supreme Court, this Court concludes that it should not extend the reasonable expectations prong of *Toussaint* to "wrongful demotion."

In the instant case, plaintiff brought only a breach of "reasonable expectations" claim. During oral argument, plaintiff's counsel asked for leave to amend if the Court granted defendant's motion on the legitimate expectations claim. Apparently, plaintiff has something in writing that he believes establishes an "express promise." The plaintiff will be given an opportunity to assert this claim.

### CONCLUSION

For the reasons stated above, defendant's motion for summary is GRANTED. In addition, the Court grants plaintiff's motion for leave to amend his complaint to include the argument that the plaintiff and defendant had an express agreement to demote only for just cause. An Order consistent with this Opinion will be entered.